**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ISM CONNECT INVESTMENT GROUP LLC,<br><br>                         Plaintiffs,<br>         v.<br><br>ISM CONNECT, LLC f/k/a DATA TRANSFER,<br>LLC, MAURICE GALLAGHER JR, GALLAGHER<br>FAMILY INVESTMENTS, LLC, KENT HEYMAN,<br>RYAN OWEN, and JEFFREY HUTCHINS<br><br>                         Defendants. | **OPINION**<br>Civ. No. 18-1055 (WHW-CLW) |

**Walls, Senior District Judge**

In this securities fraud and breach of fiduciary duty action, Defendants ISM Connect, LLC ("ISM Connect"), Maurice Gallagher, Jr. ("Gallagher"), Gallagher Family Investments, LLC ("GFI"), Kent Heyman ("Heyman"), Ryan Owen ("Owen") (collectively, the "ISM Defendants"), and Jeffrey Hutchins ("Hutchins") (together with the ISM Defendants, "Defendants") move to dismiss the First Amended Complaint under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 12(b)(6), and to transfer this action to the District of Nevada under 28 U.S.C. § 1404(a). ECF Nos. 21, 24. Plaintiff ISM Connect Investment Group LLC ("Investment Group") opposes. ECF Nos. 31, 32. Decided without oral argument under Federal Rule of Civil Procedure 78, the motion to transfer is DENIED and the motion to dismiss is GRANTED IN PART and DENIED IN PART.

NOT FOR PUBLICATION

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### 1. Overview

Plaintiff began this action with a January 25, 2018 complaint. ECF No. 1. A First Amended Complaint (the "Amended Complaint") followed on March 19, 2018. ECF No. 9. The Amended Complaint alleges that the ISM Defendants misled Investment Group by failing to disclose critical information regarding ISM Connect's operations and management before entering into a transaction with Investment Group, that Hutchins breached his fiduciary duty to ISM Group in effectuating the transaction without receiving the critical information, and that the ISM Defendants aided and abetted Hutchins's breach. 1AC ¶¶ 4-10.

### 2. The Parties and Transactions

Plaintiff Investment Group is a Delaware limited liability company ("LLC") headquartered in New Jersey and formed for the "sole purpose" of investing in ISM Connect. 1AC, ¶ 11; Hutchins Mot. Ex. B, § 2.1 (the "LLC Agreement")[2]. Nelson Martinez was the Initial Member of Investment Group and is its second-largest shareholder. LLC Agreement at 1, Sch. A.

Defendant ISM Connect was formerly known as Data Transfer, LLC ("DT"), and is a Nevada LLC with its principal place of business in Pennsylvania. 1AC ¶ 12. Gallagher is a Nevada resident and Principal interest holder in ISM Connect. *Id.* ¶ 13. Defendant GFI is a Nevada LLC that, along with Gallagher, owns all Class A Shares of ISM Connect. *Id.* ¶ 14. Defendant Heyman is the Customer Mobile CEO of ISM Connect and a New York resident. *Id.* ¶

---

[1]     Unless stated otherwise, all facts are drawn from the First Amended Complaint ("1AC"), ECF No. 9. These facts are taken as true for the purpose of the Defendants' motion. *See* "[I]n deciding a motion to dismiss, all well-pleaded allegations ... must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *Cuevas v. Wells Fargo Bank, N.A.*, 643 F. App'x 124, 125-26 (3d Cir. 2016) (quoting *McTernan v. City of York,* 577 F.3d 521, 526 (3d Cir. 2009)).

[2]     The Court may take judicial notice of ISM Connect's LLC Agreement because it is a "public record[.]" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. Juris. § 1357 (3d ed. 2004)). *See also Bravetti v. Liu*, No. CIV.A. 12-7492 MAS, 2015 WL 1954466, at *1 n.1 (D.N.J. Apr. 29, 2015) (taking judicial notice of articles of incorporation).

NOT FOR PUBLICATION

15. Defendant Owen, a Pennsylvania resident, is the President of ISM Connect. And Defendant Hutchins is the Vice President of Operations at ISM Connect and a New Jersey resident. *Id.* ¶ 43. He also served for a time as Manager of Investment Group. *Id.* ¶ 17.

    a.  <u>The Merger</u>

On June 26, 2017, DT agreed to buy Ingenuity Sun Media, LLC ("Ingenuity")[3] for $30 million and entered into a Merger Agreement with Ingenuity and its selling shareholders (the "Selling Shareholders"), including Martinez. *Id.* ¶¶ 22, 25. In the Merger Agreement, DT agreed to deposit $6 million into an escrow account (the "Escrow Amount"). *Id.* ¶ 29. The merger closed on June 28, 2017, and the Escrow Amount was due on August 27, 2017.  *Id.* ¶¶ 39, 40. Following the merger, DT was the Surviving Company and changed its name to ISM Connect, LLC. *Id.* ¶¶ 27, 30.

ISM Connect did not fund the Escrow Amount by the August 27 deadline, and on September 15, 2017 it informed Investment Group that it had no intention of doing so. *Id.* ¶ 56. In the interim, Selling Shareholders made several requests that ISM Connect fund the Escrow Amount. *Id.* ¶ 54. Heyman responded with several misleading statements about ISM Connect's intentions. *Id.*

According to Investment Group, the ISM Defendants had decided not to fund the Escrow Amount before the funding deadline. *Id.* ¶ 46. The Amended Complaint alleges that the ISM Defendants never notified Investment Group about their intention not to fund the Escrow Amount because majority interest holders in Investment Group were Selling Shareholders, and because it would jeopardize the Investment Group's investment in ISM Connect. *Id.* ¶¶ 47-49.

---

[3]    Before the merger, Ingenuity deployed "360° digital engagement platforms" at large consumer venues such as stadiums and malls. 1AC ¶ 23.

NOT FOR PUBLICATION

    b.  <u>The Investment</u>

Around the time of the merger, Heyman and Owen pressured several Selling

Shareholders to invest about $2 million in ISM Connect, but did not explain why. *Id.* ¶¶ 32, 33.

Martinez and others (including several Selling Shareholders) then formed Investment Group on

August 15, 2017, and capitalized it with $1,950,000. *Id.* ¶ 34; LLC Agreement Sch. A. Hutchins

was appointed manager of Investment Group on August 31, 2017. *Id.* ¶ 42. He was responsible

for obtaining executed copies of all documentation for the Investment Group's investment in

ISM Connect. *Id.* ¶ 45. According to the LLC Agreement, Hutchins also owed the Investment

Group fiduciary duties of loyalty and care. *See* LLC Agreement, § 4.4. He separately became

Vice President of Operations at ISM Connect following the merger. 1AC ¶ 44.

In negotiations with Investment Group, ISM Connect, Heyman, and Owen discussed

Investment Group receiving class B non-voting membership interests in (and becoming a

member of) ISM Connect, in exchange for its investment. 1AC ¶ 36. ISM Connect and

Investment Group ultimately entered into a Subscription Agreement to that effect. *See* Hutchins

Mot. Ex. C (the "Subscription Agreement"). Martinez signed the Subscription Agreement on

behalf of Investment Group, which obligated it to pay ISM Connect $1,950,000 in exchange for

2,509,824 Class B shares. *Id.* at 8, 9.

Hutchins did not obtain the documents required to finalize the planned investment. 1AC

¶¶ 50, 55. Between September 8 and September 15, 2017, Hutchins, as manager of Investment

Group, directed $1,950,000 to be wire transferred to ISM Connect. *Id.* ¶ 50. Investment Group

alleges that he did so under the direction of the ISM Defendants. *Id.* ¶ 51.

Following its payments to ISM Connect, Investment Group learned for the first time

about several material management decisions, changes, and activities at ISM Connect. *Id.* ¶ 53.

NOT FOR PUBLICATION

These decisions included terminating the person in charge of technology and hiring an unqualified replacement, hiring an inexperienced sales executive, refusing to hire experienced advertising sales staff, halting development of a promising app that Ingenuity had been developing, and terminating several essential Ingenuity employees. *Id.* Because of these decisions and ISM Connect's failure to provide complete investment documentation, Investment Group was unable "to properly evaluate the risk in investing in ISM Connect and understand the company's financial condition and operations." *Id.* ¶ 57.

Investment Group requested the return of its investment in ISM Connect on December 15, 2017. *Id.* ¶ 61. ISM Connect has not complied. *Id.* ¶ 62.

### 3. Litigation History

On November 20, 2017, Martinez sued ISM Connect for breach of contract in the United States District Court for the District of Nevada, alleging that ISM Connect's failure to fund the Escrow Amount breached the Merger Agreement. *See* 17-cv-02905 (D. Nev.) (the "Nevada Action") ECF No. 1. Martinez brought the Nevada Action in his capacity as a selling shareholder in Ingenuity. *Id.* Martinez amended his complaint on April 6, 2018, Nevada Action ECF No. 25, and ISM counterclaimed for breach of contract, breach of the covenant of good faith, fraud, conversion, and a declaratory judgment. Nevada Action ECF No. 62. That case has already seen significant motion practice—a motion to dismiss by ISM Connect and a motion for partial summary judgment by Nelson, Nevada Action ECF Nos. 31, 34—and some discovery, Nevada Action ECF Nos. 49, 50, 59 (discovery motions).

**NOT FOR PUBLICATION**

While the Nevada Action was pending, ISM Connect brought this action against Defendants. Plaintiff asserts claims for:

(i)     rescission under Section 12(a)(2) of the 1933 Securities Act (the "1933 Act") against ISM Connect (Count 1);

(ii)    rescission under Section 12(a)(1) of the 1933 Act (Count 2) against ISM Connect;

(iii)   securities fraud under Section 10(b) of the 1934 Securities Exchange Act (the "1934 Act") and Rule 10b-5 against ISM Connect, Gallagher, Owen, and Heyman (Count 3);

(iv)    securities fraud under Section 20(a) of the 1934 Act and Rule 10b-5 against Gallagher, GFI, Heyman, and Owen Count 4);

(v)     violation of New Jersey's Uniform Securities Law ("USL") against ISM Connect (Count 5);

(vi)    fraudulent concealment against ISM Connect, Gallagher, Heyman, and Owen (Count 6);

(vii)   conspiracy to violate Section 10(b) of the 1934 Act, Rule 10b-5, and New Jersey's USL against ISM Connect, Gallagher, Heyman, and Owen (Count 7);

(viii)  legal and equitable fraud against ISM Connect, Gallagher, Heyman, and Owen (Count 8);

(ix)    breach of fiduciary duty against Hutchins (Count 9); and

(x)     aiding and abetting breach of fiduciary duty against ISM Connect, Gallagher, Heyman, and Owen (Count 10).

NOT FOR PUBLICATION

## STANDARD OF REVIEW

Rule 12(b)(6) allows for dismissal where the non-moving party fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

In assessing a plaintiff's claims, a district court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); Charles A. Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. Juris. § 1357 (3d ed. 2004). "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

NOT FOR PUBLICATION

## DISCUSSION

1. **Transfer to the District of Nevada**

    a. <u>Venue in the District of New Jersey</u>

The ISM Defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(3) on the grounds that venue is improper in this district. ECF No. 24-1 at 29-30. If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. 1404(a). The movant has the burden of demonstrating that venue is improper. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 160 (3d Cir. 2012). Venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

Investment Group argues that venue is proper because "a substantial part of the events or omissions giving rise to the claim occurred" in this District. ECF No. 32 at 37-38. The Court agrees. Plaintiff Investment Group is headquartered in New Jersey, 1AC ¶ 11, and Martinez, who signed the Merger Agreement and the Subscription Agreement and has operated Investment Group since its founding, lives here as well. Hutchins Mot. Ex. A at 68; Subscription Agreement at 8. So too Defendant Hutchins, who served as Investment Group's manager and executed the three wire transfers that transferred the $1,950,000 to ISM Connect. 1AC ¶¶ 17, 50. Although not specifically pled (or denied), it is reasonable to infer that Martinez and Hutchins acted at all

NOT FOR PUBLICATION

relevant times in New Jersey. *Cuevas*, 643 F. App'x at 126 ("all inferences must be drawn in favor of" the plaintiff). Plaintiff's claims are based in large part on "misleading statements" made and material disclosures not made to New Jersey-based Investment Group. 1AC ¶¶ 47-49, 53-54. Consequently, any harm suffered from losing $1,950,000 is felt here. *Id.* ¶¶ 101, 106, 116, 125, 130. *See also Remick v. Manfredy*, 238 F.3d 248, 260 (3d Cir. 2001) (harm felt by business where it is "based"); *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 388 (D.N.J. 2016) (company felt "brunt of the harm in New Jersey" because it is headquartered in New Jersey, hired defendant in New Jersey, and signed relevant contracts in New Jersey).[4]

These acts and omissions taken together satisfy Section 1391's requirement that a "substantial part" of the underlying events occur in New Jersey. 28 U.S.C. § 1391(b). The venue statute "does not require a majority of the events to take place here, nor that the challenged forum be the best forum for the lawsuit to be venued." *Park Inn Int'l, L.L.C. v. Mody Enterprises, Inc.*, 105 F. Supp. 2d 370, 376 (D.N.J. 2000) (citing *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)); *see also Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005) ("'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts."). Consequently, the ISM Defendants' discussion of events occurring in Nevada or Pennsylvania is irrelevant. *See* ECF No. 24-1 at 9.

Even if many or most events took place outside New Jersey, a "substantial part" of the events—including the locations of the harm, of Plaintiff's reliance on the alleged misrepresentations and omissions, of Plaintiff's and Defendant Hutchins's actions regarding

---

[4]     *Remick* and *MaxLite* are intentional tort cases, but there is no reason why their logic should not apply with equal force to securities fraud and breach of fiduciary duty claims.

**NOT FOR PUBLICATION**

Investment Group's purchase of Class B shares—underlying Investment Group's claims took place here. *See Hyman v. W. Coast Holdings Grp., Inc.*, No. CIV. 10-6237 WHW, 2012 WL 1393106, at *6 (D.N.J. Apr. 20, 2012) (venue proper for fraud and breach of fiduciary duty claims where harm "was centered in New Jersey" and "Plaintiffs were located in New Jersey when Defendants negotiated the [allegedly fraudulent] documents with them"); *Omega Fin. Servs., Inc. v. Innovia Estates & Mortg. Corp.*, No. CIV.A.07-1470(JAG), 2007 WL 4322794, at *4 (D.N.J. Dec. 6, 2007) (New Jersey proper venue for fraud claim where alleged misrepresentations were directed into New Jersey and harm was felt in New Jersey); *Print Data Corp. v. Morse Fin., Inc.*, No. CIV.01-CV-4430(WGB), 2002 WL 1625412, at *6 (D.N.J. July 12, 2002) (venue proper for fraud claims where "[v]irtually all of Plaintiff's detrimental reliance on Defendants' alleged fraudulent misrepresentations occurred in New Jersey"); *see also Ragner Tech. Corp. v. Berardi*, 287 F. Supp. 3d 541, 556 (D.N.J. 2018) ("While there were other significant events occurring in the State of Florida as well, the Court finds there are enough contacts in New Jersey" for venue to be proper here.). The ISM Defendants' motion to dismiss this action under Federal Rule of Civil Procedure 12(b)(3) is denied.

      b.  <u>Transfer under 28 U.S.C. § 1404(a)</u>

      Defendants also move to transfer this action to the District of Nevada under 28 U.S.C. § 1404, which reads: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In ruling on a motion under this provision, the Court is free to consider "all relevant factors," and the Third Circuit directs district courts to a list of private and public interest factors. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (considering plaintiff's choice of forum; the defendant's preference; where the claim arose; the

NOT FOR PUBLICATION

convenience of parties and witnesses; and the location of books and records; relative court congestion; any local interest in deciding localized controversies; public policies of the fora; the enforceability of the judgment; and practical considerations that could make the trial easy, expeditious, or inexpensive).

### i. Earlier-filed case in Nevada

The ISM Defendants contend that this action should be transferred to the District of Nevada because a related action is pending there, between Martinez and ISM Connect, regarding the same subject matter. ECF No. 24-1 at 30-31. Generally, "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)). But "the most important consideration in a first-filed rule analysis is overlapping subject matter." *Catanese v. Unilever*, 774 F. Supp. 2d 684, 687 (D.N.J. 2011). "[W]hether the cases share subject matter is more important than the absolute identity of the parties." *Ivy Dry, Inc. v. Zanfel Labs., Inc.*, No. CIV A 08-4942 (WHW), 2009 WL 1851028, at *5 (D.N.J. June 24, 2009) (citing *E.E.O.C.*, 850 F.2d at 971).

The subject matter of this case and the Nevada Action do overlap in that both involve ISM Connect's failure to fund the Escrow Amount. But the differences far outweigh the similarities. The Nevada action concerns the DT-Ingenuity merger, Nevada Action ECF No. 25 ¶ 1; this case touches on that earlier transaction, but it deals primarily with Investment Group's purchase of securities from ISM Connect. 1AC, ¶ 1. Martinez in the Nevada Action brings claims for breach of contract and breach of the implied covenant of good faith and fair dealing, Nevada Action ECF No. 25 ¶¶ 31-52; Investment Group here sues for breach of fiduciary duty

**NOT FOR PUBLICATION**

and various types of fraud, 1AC ¶¶ 63-130. The Nevada Action features counterclaims by ISM Connect, Nevada Action ECF No. 62; this case does not. These differences separate the present case from other decisions in the District transferring a case in favor of a first-filed action. *See Sai Ram Imports Inc. v. Meenakshi Overseas LLC*, No. CV 17-11872 (JLL), 2018 WL 2045996, at *5 (D.N.J. May 1, 2018) (first-filed rule applicable where other proceedings already considering validity of same patents); *Catanese*, 774 F. Supp. 2d at 688 (first-filed rule applicable where separate plaintiff classes make "exact same allegations against the exact same defendant" in different districts); *Ivy Dry, Inc.*, 2009 WL 1851028, at *5 (actions "substantially related" and first-filed rule applicable where question of whether patents were "improperly marked" is central to dueling actions regarding same product). The first-filed rule does not apply here.

> ii. *Forum selection clause*

Hutchins argues that because he is subject to a New Jersey forum selection clause (in the Investment Group's LLC Agreement) and the ISM Defendants are subject to a Nevada forum selection clause (in ISM Connect's Operating Agreement), the Court should apply the four-part test articulated in *In re: Howmedica Osteonics Corp.*, 867 F.3d 390 (3d Cir. 2017), to Defendants' transfer motions. ECF No. 21-1 at 14-15. Hutchins is correct that *In re: Howmedica* set forth a test for analyzing a transfer motion where some but not all parties agreed to a forum selection clause. *See id.* at 403-404. And he is correct that neither forum selection clause binds all parties. Yet the *In re: Howmedica* test is inapplicable here because, unlike in that case, none of Investment Group's ten Counts involve forum selection clauses binding some but not all parties. *See Howmedica Osteonics Corp. v. Sarkisian*, 14-cv-3449 (D.N.J) ECF No. 29 (Am. Compl.) ¶¶ 118-124 (Count 7 brought against contracting and non-contracting defendants).

NOT FOR PUBLICATION

Count 9 is Investment Group's single claim against Hutchins (and only Hutchins). 1AC ¶¶ 117-125. Both parties *to that Count* are bound by the New Jersey forum selection clause in Investment Group's LLC Agreement. LLC Agreement § 13.7. Consequently, New Jersey is the appropriate forum for Count 9. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013) ("[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.").

Investment Group's other Counts are brought exclusively against some or all ISM Defendants. *See* 1AC ¶¶ 63-116, 126-130. Hutchins argues that some but not all ISM Defendants are governed by the Nevada forum selection clause in the ISM Connect Operating Agreement. *See* Hutchins Mot. Ex. D, § 15.05. But regardless of who is bound by that Agreement, its forum selection clause does not apply to Investment Group's claims. By its terms, that clause only applies in "any litigation involving the *interpretation or enforcement of this Operating Agreement*[.]" *Id.* (emphasis added). None of Investment Group's claims involve the interpretation or enforcement of ISM Connect's Operating Agreement, so the Nevada forum selection clause does not apply. The Court will analyze the ISM Defendants' transfer motion under this Circuit's traditional public and private interest factors. *See Reading Health Sys. v. Bear Stearns & Co.*, No. 16-4234, 2018 WL 3735206, at *7 (3d Cir. Aug. 7, 2018) ("If a party invokes a forum-selection clause to transfer an action . . . but the district court concludes that the action does not fall within the scope of the clause, the traditional § 1404(a) framework applies[.]").

### iii.   Public and private interest factors

This Circuit's *Jumara* private interest factors—plaintiff's choice of forum; the defendant's preference; where the claim arose; the convenience of parties and witnesses; and the

**NOT FOR PUBLICATION**

location of books and records—and public interest factors—relative court congestion; any local
interest in deciding localized controversies; public policies of the fora; the enforceability of the
judgment; and practical considerations that could make the trial easy, expeditious, or
inexpensive—weigh against transferring this action. Plaintiff Investment Group chose to litigate
in this forum, which "is a paramount consideration [that] should not be lightly disturbed." *Shutte
v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). *See also Jumara*, 55 F.3d at 880 ("courts
normally defer to a plaintiff's choice of forum"). But Defendants all prefer to litigate in Nevada.
The convenience of the parties and the witnesses is neutral: Plaintiff and its witnesses are here,
while five of the six defendants are outside New Jersey, as are most of their witnesses. The
location of the books and records is also neutral, with Investment Group's in New Jersey and
Defendants' primarily in Nevada. In any event, the Court notes that this factor is less important
"in the age of electronic discovery." *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 394
(D.N.J. 2016) (factor neutral because electronic discovery enables California and Georgia parties
to easily produce documents in New Jersey). The Court also cannot say that Investment Group's
claims arose primarily in either New Jersey or Nevada, as "both venues have ties to the facts at
issue in this case[.]" *Yocham v. Novartis Pharm. Corp.*, 565 F. Supp. 2d 554, 559 (D.N.J. 2008)
(factor neutral where plaintiff injured in one state by product developed and tested in another).

　　For the same reason, the local interest in deciding localized controversies factor is
neutral: important events took place in both proposed venues. Relative court congestion, a factor
of "minimal importance," *Fernandes v. Deutsche Bank Nat'l Tr. Co.*, 157 F. Supp. 3d 383, 391
(D.N.J. 2015), is neutral. Hutchins cites statistics showing that a higher percentage of District
Judge seats are vacant in this District than in the District of Nevada, *see* ECF No. 21-1 at 18-19,
while Investment Group's figures show that courts in the District of Nevada take longer to

NOT FOR PUBLICATION

dispose of civil cases than do courts here, *see* ECF No. 31 at 21-22. None of the parties point to any public policies of New Jersey or Nevada, any potential issues enforcing a judgment, or any practical considerations beyond what is discussed. These factors are neutral as well. On balance, then, all factors are neutral except for two: plaintiff's choice of forum and defendants'. Because Plaintiff's choice of forum "is a paramount consideration [that] should not be lightly disturbed," *Shutte*, 431 F.2d at 25, the Court denies Defendants' motion to transfer. *See* Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3848 (4th ed. 2018) ("Without more, it is not enough that the defendant would prefer another forum[.]").

### 2. Personal Jurisdiction over the ISM Defendants

The ISM Defendants also move to dismiss the Amended Complaint because "none of the [ISM] Defendants are residents of New Jersey" and consequently this Court lacks personal jurisdiction. ECF No. 24-1 at 27 (emphasis in original). A federal district court "may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (internal quotation marks and citations omitted). New Jersey's long arm statute provides for personal jurisdiction as far as is permitted by the Fourteenth Amendment to the United States Constitution. *FlagHouse, Inc. v. ProSource Development, Inc.*, 528 F. App'x 186, 188-89 (3d Cir. 2013).

The due process clause of the Fourteenth Amendment permits a forum state to exercise general personal jurisdiction over a non-resident defendant when that defendant has "continuous and systematic" contacts with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). The due process clause also allows a forum state to exercise specific personal jurisdiction over a non-resident defendant if that defendant has the "minimum contacts"

**NOT FOR PUBLICATION**

with the state necessary for the defendant to have "reasonably anticipate[d] being haled into court there," as long as the plaintiff's claim is related to or arises of out the defendant's contacts with the state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). What qualifies as sufficient contacts in any given case "will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State," and the "unilateral activity" of the plaintiff "cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

When a defendant moves to dismiss for lack of personal jurisdiction, "the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal quotation marks and citations omitted). The plaintiff may establish "jurisdictional facts through sworn affidavits or other competent evidence," but may not rely on "the bare pleadings alone in order to withstand a defendant's" motion. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). In deciding a motion to dismiss for lack of personal jurisdiction, a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (internal quotation marks and citations omitted).

This Court has personal jurisdiction over the ISM Defendants, all of whom had sufficient "minimum contacts" with this District that they could "reasonably anticipate being haled into court" here. *Burger King*, 471 U.S. at 474. ISM Connect has an office here. ECF No. 24-1 at 28.

16

**NOT FOR PUBLICATION**

Heyman and Owen pressured New Jersey-based Investment Group "to turn over the proposed investment funds." 1AC ¶ 41. The ISM Defendants "never disclosed to Investment Group that they were not going to fund the Escrow Amount" and "failed to . . . disclose material management decisions and actions," omissions which, according to the Amended Complaint, were expressly aimed at deceiving Investment Group in New Jersey. *Id.* ¶¶ 47-49, 56. And Heyman allegedly "made deliberately misleading statements about ISM Connect's intention to fund the Escrow Amount." *Id.* ¶ 54. These misrepresentations and omissions, which were aimed at New Jersey because they were intended to harm Investment Group here and involved communications (or decisions not to communicate) with New Jersey, are sufficient for personal jurisdiction over ISM Connect, Heyman, and Owen, and Gallagher.[5] *See Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 14 (3d Cir. 2008) (knowingly entering into fraudulent transaction with Pennsylvania counterparty gives rise to personal jurisdiction in that state); *see also Felland v. Clifton*, 682 F.3d 665, 676 (7th Cir. 2012) (material misrepresentations directed at counterparty in forum state constitute minimum contacts with that state); *Merced v. Gemstar Canada, Inc.*, No. CV 10-3054, 2011 WL 13142123, at *1 n.1 (E.D. Pa. Dec. 2, 2011) (defendant "chose not to communicate its knowledge about the hazards" of its product to counterparties in Pennsylvania, which supports personal jurisdiction there).

The ISM Defendants focus on general personal jurisdiction, arguing that they "do not regularly transact business in New Jersey." ECF No. 24-1 at 28. That may well be true, but it ignores this Court's power to exercise specific personal jurisdiction over a defendant where

---

[5]       The allegations against Gallagher are sufficient for personal jurisdiction over GFI as well. Defendants do not dispute Investment Group's allegation, 1AC ¶ 85, that GFI is Gallager's "alter ego." *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (court has personal jurisdiction over parent company that "controls" subsidiary subject to personal jurisdiction); *Hunt v. Glob. Incentive & Meeting Mgmt.*, No. CIV.A.09-4921 JBS, 2010 WL 3740808, at *8 (D.N.J. Sept. 20, 2010) (applying "alter ego" theory of personal jurisdiction to corporate defendant controlled by individual defendant).

NOT FOR PUBLICATION

plaintiff's "claim arises from or relates to [defendant's] conduct purposely directed at the forum state." *Stampone v. Fopma*, 567 F. App'x 69, 70 (3d Cir. 2014) (quoting *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008)). And the only case the ISM Defendants reference, *Telesis Mergers & Acquisitions, Inc. v. Atlis Fed. Servs.*, Inc., 918 F. Supp. 823 (D.N.J. 1996), is inapposite. There the defendants entered into a contract with a New Jersey-based plaintiff, but "the only contact by the Defendants with the forum was an initial telephone call or letter." *Id.* at 834. The plaintiff travelled to Maryland to discuss the contract with the defendants, and the plaintiff was not retained in order to provide services specifically in New Jersey. *Id.* The ISM Defendants had much more contact with New Jersey. Crucially, they allegedly made material misrepresentations to Investment Group in New Jersey, and knew that their material omissions would harm Investment Group here. 1AC ¶¶ 47-49, 54, 56. The ISM Defendants' motion to dismiss for lack of personal jurisdiction is denied.

### 3. Rescission under Section 12(a)(2) (Count 1)

Investment Group seeks rescission of the Subscription Agreement pursuant to Section 12(a)(2) of the 1933 Act, which creates liability for anyone who "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact [.]" 15 U.S.C. § 77l(a)(2). ISM Connect moves to dismiss this Count on the grounds that Section 12(a)(2) applies only to securities sold through a public offering, rather than a private sale. ECF No. 24-1 at 5-6. Indeed, the Supreme Court has ruled that Section 12(a)(2) does not apply to private sales but instead only to "a public offering of securities by an issuer or controlling shareholder." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 584 (1995) (reversing decision that allowed Section 12(a)(2) claim regarding securities "not held out to the public" to proceed).

**NOT FOR PUBLICATION**

Investment Group urges the Court to follow *Fisk v. Superannuities, Inc.*, 927 F. Supp.

718 (S.D.N.Y. 1996), which declined to grant a motion to dismiss a Section 12(a)(2) claim

simply because the transaction was a private sale. ECF No. 32 at 8-9. But *Fisk* is different from

this case in one crucial respect: in *Fisk*, the parties disagreed as to "whether the offering was a

*bona fide* private placement," so the court let the case proceed to discovery to see what "facts . . .

might be proved" regarding the public or private nature of the transactions. 927 F. Supp. at 730-

31. There is no such dispute here, as Investment Group does not allege that it purchased

securities through a public offering. *See Laser Mortg. Mgmt. v. Asset Securitization Corp.*, No.

00 Civ. 8100 (NRB), 2001 U.S. Dist. LEXIS 13746, at *25 (S.D.N.Y. Sept. 6, 2001) (granting

motion to dismiss Section 12(a)(2) claim where plaintiff does not dispute private nature of sale).

And its contention that the Amended Complaint "makes numerous allegations regarding ISM

Connect's failure to properly effectuate the procedures and documents evidencing a private

placement transaction" is beside the point. ECF No. 32 at 9. Failing to properly effectuate a

private placement does not convert the transaction into a public offering.

*Gustafson* held that Section 12(a)(2) only applies to "a *public* offering of securities[.]"

513 U.S. at 584 (emphasis added). Investment Group does not allege that the Class B shares it

purchased were sold through a public offering. ISM Connect's motion to dismiss Count 1 is

granted.

### 4. Rescission under Section 12(a)(1) (Count 2)

Investment Group also seeks rescission because ISM Connect "offer[ed] or s[old] a

security in violation of section 77e"—which requires, among other things, the filing of a

registration statement—so ISM Connect is "liable . . . to the person purchasing such security

from him, who may sue either at law or in equity . . . to recover the consideration paid for such

19

**NOT FOR PUBLICATION**

security[.]" 15 U.S.C. §§ 77e(c), 77l(a)(1). To state a claim under Section 12(a)(1), Investment

Group must plead "(1) a sale or offer to sell securities by the defendant; (2) the absence of a

registration statement; and (3) the use of the mails or facilities of interstate commerce in

connection with the sale or offer." *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 638

(S.D.N.Y. 1999). Notably, "liability under § 12(a)(1) can be based upon selling *or* solicitation,"

*Id.* at 644 (emphasis in original).

      ISM Connect moves to dismiss Count 2 on the ground that the Amended Complaint does

not plead a sale of securities. ECF No. 24-1 at 6-7.[6] It acknowledges Investment Group's

allegation "that ISM sold a security," but contends that the Amended Complaint "does not

indicate to whom the security was sold" and when the purchase was made. *Id.* at 7. But these are

not elements of Plaintiff's claim. Investment Group alleges a sale by ISM Connect, 1AC ¶ 71;

lack of registration of that security, *id.* ¶ 73; and use of interstate commerce in connection with

the sale or offer, *id.* ¶¶ 50, 68. Investment Group has stated a claim for relief.

      A closer call, one which ISM Connect does not raise directly but is suggested by its

moving papers, is whether Investment Group has statutory standing to bring a Section 12(a)(1)

claim based on this sale. As this Court has previously noted, "[A] non-purchaser does not have

standing to bring a private cause of action seeking injunctive relief for a Section 12 violation."

*Trustcash Holdings, Inc. v. Moss*, 668 F. Supp. 2d 650, 654 (D.N.J. 2009) (Walls, J.). Investment

Group does not clearly allege that it purchased the securities sold by ISM Connect. Indeed, the

Amended Complaint never mentions the transaction being finalized. But the Court can look

---

[6]     The second and third elements of Investment Group's claim—absence of registration statement and use of interstate mail or wires—are not in dispute.

**NOT FOR PUBLICATION**

outside the pleadings to documents "integral to" the complaint—in this case, the parties'

Subscription Agreement.[7] The first paragraph of that Agreement reads:

> The undersigned [Investment Group] tenders this Subscription and Investment
> Agreement and hereby agrees to the purchase from ISM Connect, LLC, a Nevada
> limited liability company (the "Company") of the number of membership interests
> denominated in Class B shares (the "Shares") of the Company[.]

Subscription Agreement ¶ 1. ISM Connect and Investment Group each signed the Subscription

Agreement. *Id.* at 8, 9. Investment Group then transferred $1,950,000 to ISM Connect in

exchange for the Class B shares. 1AC ¶ 50. The Court is satisfied that Investment Group

purchased securities from ISM Connect and consequently has standing under Section 12(a)(1).

ISM Connect's motion to dismiss Count 2 is denied.

5.   **Securities Fraud and Conspiracy to Commit Securities Fraud (Counts 3, 4, 5, and 7)**

   a.   Section 10(b) of the 1934 Act and Rule 10b-5 (Count 3)

The ISM Defendants move to dismiss Plaintiff's claim under Section 10(b) of the 1934

Act, which prohibits the use of fraudulent schemes or devices in connection with the purchase or

sale of securities. 15 U.S.C. § 78j(b). Under § 10(b), it is unlawful to "employ, in connection

with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance

in contravention" of any rule promulgated by the Securities and Exchange Commission (the

"SEC") designed to protect the investing public. *Id.* To implement the statute, the SEC enacted

Rule 10b-5, violation of which gives rise to a private cause of action. *Ernst & Ernst v.*

*Hochfelder*, 425 U.S. 185 (1976). That Rule, in turn, deems it unlawful: (1) "To employ any

---

[7]      *See Am. Corp. Soc. v. Valley Forge Ins. Co.*, 424 F. App'x 86, 88 (3d Cir. 2011) ("In addition to the
complaint and any exhibits attached thereto, we may also consider 'an undisputedly authentic document . . .
attache[d] as an exhibit to [the] motion to dismiss if the plaintiff's claims are based on the document[.]'" (citing
*Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *DiFronzo v. Chiovero*,
406 F. App'x 605, 607 (3d Cir. 2011) ("a document integral to or explicitly relied upon in the complaint may be
considered without converting the motion [to dismiss] into one for summary judgment").

**NOT FOR PUBLICATION**

device, scheme, or artifice to defraud," (2) "[t]o make any untrue statement of a material fact" or

to omit to state a material fact so that the statements made "in light of the circumstances," are

misleading, and (3) "[t]o engage in any act, practice, or course of business which operates or

would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b-5. To plead a Rule

10b-5 claim based on a Section 10(b) violation, a plaintiff must allege the following elements:

> (1) *a material misrepresentation (or omission)*;
>
> (2) *scienter, i.e.*, a wrongful state of mind;
>
> (3) *a connection with the purchase or sale of a security*;
>
> (4) *reliance,* often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation";
>
> (5) *economic loss*; and
>
> (6) "*loss causation*," *i.e.*, a causal connection between the material misrepresentation and the loss.

*Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 341-42 (2005) (citations omitted) (italics in

original).

Investment Group's Section 10(b) claim fails because it does not adequately plead loss

causation. Investment Group argues that this decision is inappropriate for resolution at the

motion to dismiss stage and relies on *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865 (3d

Cir. 2000), in which the court reversed the dismissal of plaintiff's Section 10(b) claim on the

grounds that the plaintiff had sufficiently pled loss causation. As Investment Group points out,

ECF No. 32 at 23, the Third Circuit held the plaintiff's allegation that "it was induced to make an

investment of $1.4 million *which turned out to be worthless*" a sufficient allegation of loss

causation. *Id.* at 884 (emphasis added). But the italics the Court has added to the above quotation

**NOT FOR PUBLICATION**

are crucial: Investment Group, unlike the plaintiff in *EP Medsystems*, fails to allege that the value of its investment diminished as a result of the ISM Defendants' misrepresentations and omissions. Indeed, nowhere in the Amended Complaint does Investment Group claim that the Class B shares that it purchased from ISM Connect have declined in value since that date. Merely stating that Investment Group parted with $1,950,000 in order to acquire those shares is insufficient. *See McCabe v. Ernst & Young, LLP.*, 494 F.3d 418, 424 (3d Cir. 2007) (to satisfy loss causation element plaintiffs must show "that the value of the consideration they received, at the time the [transaction] closed, was actually lower than they had been misled into believing"). Consequently, the Court will dismiss Count 3.

  b. <u>Section 20(a) of the 1934 Act and Rule 10b-5 (Count 4)</u>

   The ISM Defendants next move to dismiss Investment Group's Section 20(a) claim, which creates liability for "controlling persons" in a corporation and imposes joint and several liability upon anyone who "controls a person liable under any provision of" the 1934 Act. 15 U.S.C. § 78t(a). To maintain a claim under Section 20(a), Investment Group must establish (1) an underlying violation by a controlled person or entity, (2) that the defendants are controlling persons, and (3) that they were "in some meaningful sense culpable participants in the fraud perpetrated by controlled persons." *Rochez Brothers, Inc. v. Rhoades*, 527 F.2d 880, 885 (3d Cir. 1975) (citation omitted).

   Because Investment Group fails to state a claim for violation of Section 10(b) of the 1934 Act, it cannot plead "an underlying violation of Section 10(b) by the controlled person." *Williams v. Globus Med., Inc.*, 869 F.3d 235, 246 (3d Cir. 2017) (affirming dismissal of Section 20(a) claims "[b]ecause we affirm the dismissal of plaintiffs' claims under Section 10(b)"). The ISM Defendants' motion to dismiss Count 4 is granted.

**NOT FOR PUBLICATION**

      c.  <u>N.J.S.A. 49:3-52 and N.J.S.A. 49:3-71 (Count 5)</u>

The ISM Defendants also seek dismissal of Plaintiff's state law securities fraud claims, brought under N.J.S.A. 49:3-52 and N.J.S.A. 49:3-71. As the ISM Defendants and Investment Group both acknowledge, ECF No. 24-1 at 21 and ECF No. 32 at 26-27, Section 10(b) and Rule 10b-5 largely track the New Jersey securities fraud statutes. *See Gordon v. Dailey*, No. CV 14-7495, 2018 WL 1509080, at *6 n.5 (D.N.J. Mar. 27, 2018) (plaintiff adequately pled New Jersey securities law claim because his Rule 10b-5 claim was adequately pled); *Metz v. United Ctys. Bancorp*, 61 F. Supp. 2d 364, 380 (D.N.J. 1999) (dismissing N.J.S.A. 49:3-71 claim following dismissal of Section 10(b) and Rule 10b-5 claims because the court "does not have reason to believe that the New Jersey statute is any more or less exacting than the corresponding federal statutes"). Though the statutes differ in one respect, *see Kaufman v. i-Stat Corp.*, 165 N.J. 94, 112 (2000) (noting that New Jersey statutes differ from federal ones in not requiring proof of "reliance on the untrue statement of omission"), that difference does not relate to the fatal flaw in Investment Group's federal claims—namely, its failure to plead loss causation. Count 5 is dismissed for the same reasons as Counts 3 and 4.

      d.  <u>Conspiracy to violate Section 10(b) of the 1934 Act, Rule 10b-5, and N.J.S.A. 49:3-52 (Count 7)</u>

The ISM Defendants move to dismiss Investment Group's conspiracy securities fraud claim on the grounds that no such claim is permitted under Section 10(b). ECF No. 24-1 at 24. The parties' arguments on this point focus almost exclusively on whether such a civil conspiracy claim is cognizable. *See id.*; ECF No. 32 at 33-34; ECF No. 34 at 13-14. But given the Court's rulings on the underlying securities fraud counts, there is no need to resolve this disagreement.

To make out a Section 10(b) claim for secondary liability, such as conspiracy, the "conduct of a secondary actor must satisfy each of the elements or preconditions for liability"

**NOT FOR PUBLICATION**

under the 1934 Act. *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 158 (2008).

Because the Amended Complaint fails to state a claim as to any of the three underlying securities

fraud violations, Count 7 also fails. *See Brown ex rel. Estate of Brown v. Philip Morris Inc.*, 228

F.Supp.2d 506, 517 n. 10 (D.N.J. 2002) ("Civil conspiracy is not an independent cause of action,

and conspiracy liability depends on the presence of an underlying finding of tort liability . . .

The dismissal of plaintiff's other causes of action demands the dismissal of her conspiracy

claim."); *Cafaro v. HMC*, No. CIV. A. 07-2793 JLL, 2008 WL 4224801, at \*8 (D.N.J. Sept. 8,

2008) (dismissing civil conspiracy claim because underlying fraud claim was already dismissed).

### 6. Common Law Fraud (Counts 6 and 8)

#### a. Fraudulent Concealment (Count 6)

The ISM Defendants move to dismiss Plaintiff's fraudulent concealment claim. ECF No.

24-1 at 22-23. Investment Group alleges in this Count that the ISM Defendants failed to inform it

of ISM Connect's intent to withhold the Escrow Amount and several material changes within

ISM Connect despite a duty to disclose that information. The parties' only disagreement

regarding this claim is whether the ISM Defendants had such a duty to disclose. *See* ECF No. 24-

1 at 22-23; ECF No. 32 at 27-28.

In New Jersey, a duty to disclose arises "(1) when there is a fiduciary relationship

between the parties; (2) when one party expressly reposits trust in another party, or else from the

circumstances, such trust necessarily is implied; and (3) when the relationship involving the

transaction is 'so intrinsically fiduciary that a degree of trust and confidence is required to

protect the parties[.]'" *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 603 (D.N.J. 2016)

(quoting *Lightning Lube*, 4 F.3d at 1185 (3d Cir. 1993)); *see also Berman v. Gurwicz*, 189 N.J.

Super. 89, 93 (Ch. Div. 1981) (describing the three classes in which a duty to disclose

**NOT FOR PUBLICATION**

arises), *aff'd*, 189 N.J. Super. 49 (App. Div. 1983). The ISM Defendants argue that the investment was not an "intrinsically fiduciary" transaction giving rise to a duty to disclose. ECF No. 24-1 at 23. Investment Group stated in its Amended Complaint that its investment created an "intrinsically fiduciary" relationship, 1AC ¶ 94, but in its brief claims that a duty to disclose arises because it implicitly placed its trust in the ISM Defendants. ECF No. 32 at 28. Neither party argues that ISM Connect had a fiduciary relationship with Investment Group, and the Court sees no justification for considering their investment relationship "intrinsically fiduciary." *See City of Millville v. Rock*, 683 F. Supp. 2d 319, 331 (D.N.J. 2010) (transaction not "intrinsically fiduciary" where no dispute that defendants "at all times, are acting in their own best interest"). It follows then that, the Court will focus on the second *Argabright* category, where one party expressly or implicitly puts its trust in another.

The ISM Defendants would only have a duty to disclose if they affirmatively encouraged Investment Group to rely on their advice regarding a proposed investment. *See Green v. G.M.C.*, No. A-2831-01T-5, 2003 WL 21730592, at *8 (N.J. Super. Ct. App. Div. July 10, 2003) (no duty to disclose where defendants did not do "anything to encourage plaintiffs to repose special trust or confidence in their advice, thereby inducing plaintiffs' reliance"). "The mere fact that Plaintiff trusted and relied on Defendant 'is insufficient to show a special relationship requiring a duty to disclose.'" *Argabright*, 201 F. Supp. 3d at 603 (quoting *Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250, 2015 WL 3487756, at *9 (D.N.J. June 2, 2015)). The defendant must do something affirmative to encourage that reliance. *See Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 719 (D.N.J. 2012) (defendant had a duty to disclose tax advice after repeatedly representing herself to be foremost tax expert and discouraging plaintiff from seeking outside tax advice).

26

**NOT FOR PUBLICATION**

Plaintiff alleges that the ISM Defendants "had a duty to disclose" material information to Investment Group. 1AC ¶ 94. But "[t]he question of whether a duty to disclose exists, constituting a fraudulent concealment, is a matter of law." *Salovaara v. Jackson Nat. Life Ins. Co.*, 66 F. Supp. 2d 593, 602 (D.N.J. 1999), *aff'd*, 246 F.3d 289 (3d Cir. 2001). The Court must determine whether the Amended Complaint pleads facts that, if true, would establish a duty to disclose. *See Ferry v. Black Diamond Video, Inc.*, No. 15-7723 (RBK/AMD), 2016 WL 3381237, at *7 (D.N.J. June 14, 2016) (rejecting the argument that the court may not determine whether a duty to disclose exists at the motion to dismiss stage). The Court finds no such facts here. The Court could find only one New Jersey fraudulent concealment case involving a sale of securities, and it suggests that securities transactions do not ordinarily give rise to a duty to disclose on the part of the seller. *See, e.g.*, *Salovaara*, 66 F. Supp. 2d at 602 (no duty to disclose in sale of securities because sale "was an arms length transaction between parties experienced in the volatile debt securities market").

Investment Group's argument rests on the contention that the ISM Defendants had "superior knowledge" of ISM Connect's planned management changes and impending failure to fund the Escrow Amount. ECF No. 32 at 28. But that alone is not enough. New Jersey courts rely on the Restatement (Second) of Torts § 551 (1977 & Supp. 1997), which only imposes a duty to disclose based on information asymmetry where "the advantage taken of the plaintiff's ignorance is 'so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling[.]'" *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 554 (App. Div. 1997). This standard creates a high bar for plaintiffs to meet in establishing a duty to disclose. In *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, another court in this District found no duty to disclose a report that did not directly indicate that a key product was defective but instead only

**NOT FOR PUBLICATION**

that there was consumer dissatisfaction with the product, on the grounds that the lack of disclosure was not, as the Restatement puts it, "so shocking to the ethical sense of the community" as to amount to swindling. 179 F.R.D. 450, 477-78 (D.N.J. 1998). So did the court in *City of Millville*, where a borrower's failure to disclose certain negative reports about its financial condition was not "so shocking . . . as to amount to a form of swindling" because the fact that the borrower requested a loan should have tipped the lender off to possible financial difficulties. 683 F. Supp. 2d at 333.

The Court finds *City of Millville* analogous to the present case: though Investment Group may have had less information about ISM Connect's financial condition and management plans than did the ISM Defendants, the fact that the ISM Defendants pressured the Selling Shareholders to invest before and immediately following the merger, 1AC ¶¶ 31, 32, 41, should have tipped off Investment Group. As in *City of Melville*, the lack of disclosure was not "so extreme and unfair, as to amount to a form of swindling[.]"[8]

Plaintiff has not alleged facts that would give rise to a duty to disclose by the ISM Defendants. Investment Group's Count 6 fails.

    b.  <u>Legal and Equitable Fraud (Count 8)</u>

The ISM Defendants also move to dismiss Investment Group's claim for legal and equitable fraud. The elements of common law fraud in New Jersey are "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the

---

[8]    The Amended Complaint also does not allege that anyone actively encouraged Investment Group to place its trust in the ISM Defendants—beyond what parties typically do in an arm's length transaction. *Compare Jeffrey Rapaport M.D., P.A.*, 859 F. Supp. 2d at 719 (D.N.J. 2012) (defendant repeatedly represented herself to be tax expert and discouraged plaintiff from seeking outside tax advice). This further weighs against finding a duty to disclose.

**NOT FOR PUBLICATION**

other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610

(1997); *see also Premier Health Assocs., LLC v. Med. Tech. Sols.*, No. CV 17-331 (JLL), 2018

WL 4043289, at *5 (D.N.J. Aug. 24, 2018) (applying same elements). Plaintiff must also show

that any damages were proximately caused by the ISM Defendants' misrepresentations. *See*

*McCabe*, 494 F.3d at 438 ("[P]roximate causation is a required element of . . . common law fraud

. . . under New Jersey law.").

Investment Group has not sufficiently pled proximate causation on its legal and equitable

fraud claim for the same reason it failed to do so on its securities fraud claims. *See id.* at 439

(Because "Plaintiffs failed to create a genuine issue as to loss causation (as required for their §

10(b) claim), they also failed to create a genuine issue as to proximate causation (as required for

their common law fraud and negligent misrepresentation claims)."); *see also Berckeley Inv. Grp.,*

*Ltd. v. Colkitt*, 455 F.3d 195, 223 (3d Cir. 2006) (noting that "loss causation" is the securities law

synonym for "proximate cause"); *McKowan Lowe & Co. v. Jasmine, Ltd.*, No. CIV. 94-5522

(RBK), 2006 WL 1228702, at *2 (D.N.J. May 5, 2006), *aff'd*, 231 F. App'x 216 (3d Cir. 2007)

(finding no proximate causation on common law fraud claim due to "absence of evidence

supporting loss causation" on securities claim). Because Investment Group has failed to plead an

essential element of common law fraud, Count 8 is dismissed.

### 7. Breach of Fiduciary Duty and Aiding and Abetting a Breach (Counts 9 and 10)

#### a. Breach of Fiduciary Duty (Count 9)

Defendant Hutchins moves to dismiss the single claim against him—that he breached his

fiduciary duties of loyalty and care to Investment Group by transferring $1,950,000 to ISM

Connect without obtaining documentation necessary for the transfer and before Investment

Group had received critical disclosures. 1AC ¶¶ 117-125. Investment Group pleads that these

NOT FOR PUBLICATION

fiduciary duties arise from its LLC Agreement, which provides that the company's manager "shall have fiduciary duties of loyalty and care analogous to that of a director of a business corporation[.]" 1AC ¶¶ 119, 120 (quoting LLC Agreement § 4.4). Because the LLC Agreement contains a Delaware choice of law provision, LLC Agreement § 13.6, Delaware law governs Investment Group's breach of fiduciary duty claim. *See Sullivan v. Sovereign Bancorp., Inc.*, 33 F. App'x 640, 641 (3d Cir. 2002) (private choice of law agreements "are generally valid under New Jersey Law").

To survive a Rule 12(b)(6) motion, a plaintiff must "plead around the business judgment rule." *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005). A plaintiff can rebut the presumption of the business judgment rule by showing that the defendant, "in reaching its challenged decision, violated any one of its triad of fiduciary duties: due care, loyalty, or good faith." *Emerald Partners v. Berlin*, 787 A.2d 85, 91 (Del. 2001). Only if that presumption is rebutted does the burden shift to the defendant "to prove to the trier of fact that the challenged transaction was 'entirely fair' to the . . . plaintiff." *Id.*

Investment Group argues that Hutchins transferred the money to ISM Connect while laboring under a conflict of interest. *See* 1AC ¶ 123; ECF No. 31 at 9. And Hutchins contends that Martinez had ratified Hutchins's alleged conflict by hiring him with knowledge that he would also be working for ISM Connect. ECF No. 21-1 at 7-8. The Court need not resolve this dispute, though, because the "fiduciary duty of loyalty is not limited to cases involving a financial or other cognizable fiduciary conflict of interest. It also encompasses cases when the fiduciary *fails to act in good faith*." *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (emphasis added). "A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the

**NOT FOR PUBLICATION**

best interests of the corporation." *Frederick Hsu Living Tr. v. ODN Holding Corp.*, No. CV

12108-VCL, 2017 WL 1437308, at *16 (Del. Ch. Apr. 14, 2017), as corrected (Apr. 24, 2017)

(quoting *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006)).

      The Amended Complaint adequately pleads a "failure to act in good faith." *Id.*

Investment Group twice contends that Hutchins acted in "bad faith" when, as Plaintiff's

manager, he wired money to ISM Connect without disclosing all material facts to Plaintiff. *See*

1AC ¶¶ 124, 125. Investment Group supports this contention by alleging that Hutchins

transferred the funds "despite knowledge that ISM Connect had not, and was not going to, fund

the Escrow Amount;" "despite knowledge that ISM Connect had failed to inform the Investment

Group of numerous relevant and material management decisions"; and "despite the failure to

obtain and complete the necessary documents to finalize the planned investment transaction[.]"

*Id.* ¶ 124. These allegations directly accuse Hutchins of acting not in the "best interests" of

Investment Group, *Frederick Hsu Living Tr.*, 2017 WL 1437308, at *16, but instead for the ISM

Defendants, under whose "supervision" he was operating. 1AC ¶ 51.

      Hutchins maintains that the transfer of funds was "a classic exercise of business judgment

because a reasonable business person could have reached that decision in good faith." ECF No.

21-1 at 8 (quoting *In re Tower Air, Inc.*, 416 F.3d at 239). He contends that Investment Group

was contractually required to wire the $1,950,000 to ISM Connect, so Hutchins was simply

fulfilling his obligation as Investment Group's manager. ECF No. 21-1 at 7-8. Hutchins does not

explain why Investment Group was contractually obligated to wire the money at the time

Hutchins did so other than pointing to the Subscription Agreement. *See* ECF No. 21-1 (referring

to the "ministerial act of transferring the funds to ISM Connect required under the Subscription

NOT FOR PUBLICATION

Agreement").[9] But the Subscription Agreement does not contain any deadline by which Investment Group was required to transfer the funds to ISM Connect. Even if Investment Group would eventually need to pay ISM Connect for the Class B shares, Hutchins was under no obligation to send the money at the time he did so—while documentation was missing and the ISM Defendants had not disclosed material facts to Investment Group. 1AC ¶¶ 45-50. These allegations raise an inference that Hutchins's actions were "the product of an irrational process," *In re Tower Air, Inc.*, 416 F.3d at 238, particularly because Hutchins allegedly acted "under the supervision of" the ISM Defendants. 1AC ¶ 51. Investment Group has "pl[e]d around the business judgment rule." *In re Tower Air, Inc.*, 416 F.3d at 238.

Where "[t]he Complaint's allegations rebut the presumptions of the business judgment rule at the pleadings stage, . . . entire fairness [becomes] the operative standard of review." *OTK Assocs., LLC v. Friedman*, 85 A.3d 696, 724 (Del. Ch. 2014). This standard asks whether the fiduciary "was acting for some reason other than the best interests of" the principal. *Id.* The Amended Complaint easily meets this pleading requirement. It alleges that Hutchins was acting "under the supervision" of the ISM Defendants, 1AC ¶ 51, had a conflict of interest due to his concurrent position at ISM Connect, *id.* ¶ 123, and wired ISM Connect almost $2 million without completing necessary paperwork or informing Investment Group of material information, *id.* ¶ 124. These facts, taken together, adequately plead that Defendants Hutchins acted for some reason other than the best interests of Investment Group. Plaintiff's Count 9 survives.

---

[9]     As discussed, the Court may consider the Subscription Agreement at the motion to dismiss stage because that document is "integral" to the Amended Complaint. *DiFronzo*, 406 F. App'x at 607.

NOT FOR PUBLICATION

     b.   Aiding and Abetting Breach of Fiduciary Duty (Count 10)

A party is liable for aiding and abetting a breach of fiduciary duty "when he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]'" *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998) (quoting Restatement (Second) of Torts § 876(b)); *see also Judson v. Peoples Bank & Tr. Co.*, 25 N.J. 17, 29 (1957) (same). The elements of the claim are "(1) a breach of fiduciary duty; (2) the defendant's knowledge of and substantial assistance in that breach; and (3) damages resulting from the breach." *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 307 (D.N.J. 2012) (citing *McCormac v. Qwest Communications Intern., Inc.,* 387 N.J. Super. 469, 481-83 (App. Div. 2006)). The ISM Defendants maintain that Investment Group has failed to meet the first two elements. ECF No. 24-1 at 25-27. To restate, Investment Group has adequately pled a breach of fiduciary duty claim against Hutchins. The only remaining question is whether the ISM Defendants knew of and substantially assisted in that breach.

New Jersey law requires that defendants "knew that the other's conduct constituted a breach of a fiduciary duty and gave substantial assistance or encouragement to the other in committing that breach." *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 174 (3d Cir. 2002). The Amended Complaint pleads facts supporting both knowledge and "substantial assistance or encouragement" by the ISM Defendants. It alleges that Hutchins transferred the funds to ISM Connect "with the knowledge, direction, and under the supervision of" the ISM Defendants. 1AC ¶ 51. Investment Group further contends that the ISM Defendants "exploited Hutchins's knowledge of and contacts with the Selling Shareholders and his position with Investment Group[.]" *Id.* ¶ 52. The Amended Complaint finally claims that the ISM Defendants "were aware of and encouraged the transfer of funds from the Investment Group

NOT FOR PUBLICATION

in September 2017, despite knowledge of the lack of proper documentation and disclosures in connection with the investment." *Id.* ¶ 129. Alleging that Hutchins acted "under the supervision" of the ISM Defendants who "were aware of and encouraged the transfer of funds" sufficiently pleads substantial encouragement. And the allegation that the ISM Defendants "exploited Hutchins's . . . his position with Investment Group" "despite knowledge of the lack of proper documentation and disclosures in connection with the investment" supports and inference that the ISM Defendants knew Hutchins was breaching his fiduciary duties to Investment Group. The Amended Complaint states a claim for aiding and abetting a breach of fiduciary duty.

The ISM Defendants' argument to the contrary is based primarily on *Schwartzman v. Morningstar, Inc.*, which was decided under Pennsylvania law and requires "actual knowledge" of a breach of fiduciary duty. No. CIV.A. 12-1647, 2014 WL 3843875, at *25 (E.D. Pa. Aug. 5, 2014). That case is not analogous to this one because the defendant there, an investment research firm that listed and rated a fund that turned out to be a Ponzi scheme, (1) was never told that the fund was a Ponzi scheme, (2) never audited the fund, and (3) never had any evidence that information submitted to defendant by the fund was false. *Id.* at *8. The defendant there was truly in the dark regarding the underlying fraud, as shown by its removal of the fund from its database after learning of the Ponzi scheme. *Id.* at *9. The ISM Defendants, by contrast, were not in the dark. They allegedly knew Hutchins was Investment Group's manager and knew that documentation and information had been withheld from Investment Group, yet encouraged Hutchins to transmit $1,950,000 from Investment Group to ISM Connect. 1AC ¶¶ 51, 52, 129. These "underlying facts[,] treated as true," state a claim for aiding and abetting a breach of fiduciary duty. *Cafaro v. HMC Int'l, LLC*, No. CIV.A.07-2793JLL, 2009 WL 1622825, at *3 (D.N.J. June 10, 2009). The motion to dismiss Count 10 is denied.

**NOT FOR PUBLICATION**

#### 8. **Leave to Replead**

Plaintiff requests leave to replead in the event the Court dismisses any part of the Amended Complaint. ECF No. 32 at 39-40. The ISM Defendants oppose on the grounds that repleading would be futile. ECF No. 34 at 15.

The Local Rules command a party moving to amend a complaint to "attach to the motion a copy of the proposed pleading[.]" L. Civ. R. 7.1(f). Investment Group has not done so. Consequently, its present motion for leave to replead is denied.

### CONCLUSION

Hutchins' motion to dismiss (ECF No. 21) is denied. The ISM Defendants' motion to dismiss (ECF No. 24) is granted as to Counts 2, 3, 4, 5, 6, 7, and 8 in their entirety. The remainder is denied. Plaintiff is granted 45 days from the date of this opinion to seek leave to amend the Amended Complaint if it wishes. An appropriate order follows.

DATE: 5 Sept 2018

William H. Walls
Senior United States District Court Judge